MAU

_____ FILED _____ ENTERED
_____ LOGGED _____ RECEIVED

NOV 12 2019

AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ DEPUTY

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| IN THE MATTER OF THE SEARCH AND SEIZURE OF THE SUBJECT ELECTRONIC DEVICE LISTED IN ATTACHMENT A | Case No.   19 - 3 5 1 3 BPG |

### AFFIDAVIT IN SUPPORT OF APPLICATION
### FOR A SEARCH AND SEIZURE WARRANT

I, Javon Weaver, a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), being duly sworn, states:

1.     This affidavit is submitted in support of an application for a search and seizure warrant of the following cellular telephone (hereinafter, "**Subject Electronic Device**"): One black LG cell phone, unknown model, unknown serial number, submitted under property number 0002 of case number 761040-18-0063, seized from Joseph COATES on February 21, 2018. The phone is stored with the property belonging to Joseph COATES at the Bureau of Alcohol, Tobacco, Firearms, and Explosives, Baltimore Field Division, located at 31 Hopkins Plaza, 5th floor, Baltimore, Maryland, 21201. *See also* Attachment A.

2.     As detailed further below, the **Subject Electronic Device** was found on the person of Joseph COATES following his arrest on February 21, 2018, and is currently in the custody of Bureau of Alcohol, Tobacco, Firearms, and Explosives, Baltimore Field Division.  The **Subject Electronic Device** remains in the same or substantially same condition as when it was first seized by law enforcement officers.

3.     The **Subject Electronic Device** is believed to contain and conceal items that constitute evidence of a violation of 18 U.S.C. § 1951, interference with commerce by threats or violence, and 18 U.S.C. § 924(c), use of a firearm in furtherance of a crime of violence.

4. The applied for warrant would authorize the forensic examination of the **Subject Electronic Device** for the purpose of identifying electronically stored data particularly described in Attachment B and using the protocols described in Attachment B by members of the ATF, or their authorized representatives, including but not limited to other law enforcement agents assisting in the above described investigation.

## AGENT BACKGROUND

5. I am "an investigative or law enforcement officer" of the United States within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, the offenses enumerated in offenses enumerated in Section 2516 of Title 18, United States Code.

6. I am an ATF Special Agent and have been since July 2013. I am currently assigned to a joint task force comprised of ATF agents and detectives from the Baltimore Police Department ("BPD") tasked with investigating violent crime in Baltimore City including homicides, non-fatal shootings, carjackings, commercial robberies, and firearm violations.

7. As part of my employment with ATF, I attended the Criminal Investigator Training Program (CITP), a twelve-week basic program held at the Federal Law Enforcement Training Center (FLETC) located in Glynco, Georgia. I also attended ATF Special Agent Basic Training (SABT), a fourteen-week training program at FLETC. During both of these courses, blocks of instruction were given on subjects such as basic investigative techniques, probable cause, constitutional law, federal controlled substances and firearms laws, including recognition of controlled substances, methods by which controlled substances are manufactured, distributed, and sold, electronic and physical surveillance techniques, including methods for collecting and analyzing toll records, wiretap information, and other forms of electronic data.

2

8.      I have participated in numerous investigations focusing on federal firearm violations, violations of the laws related to controlled dangerous substances, and violent crimes that occur in conjunction, or are associated with, the foregoing offenses.   During these investigations, I have conducted covert surveillance, interviewed numerous individuals, and participated'in the execution of numerous state and federal search and arrest warrants. I have also participated in a number of Title III wiretap investigations.

9.      During the course of the foregoing investigations, I have analyzed and made use of various forms of electronic data, including toll records, cell site information and other location data, text messages, photographs taken and/or located on cellphones, and data from social media websites.

10.      Because this affidavit is being submitted for the limited purpose of establishing probable cause for a search and seizure warrant, I have not included every detail of every aspect of the investigation. Rather, I have set forth only those facts that I believe are necessary to establish probable cause. I have not, however, excluded any information known to me that would defeat a determination of probable cause. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, police officers, witnesses, cooperating sources, telephone records, and reports. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

11.      Based on my knowledge, training, and experience, I know that individuals involved with Hobbs Act robbery frequently use cellular telephones, communication devices, and other electronic media storage to further their illegal activities.   More specifically, based upon my knowledge, training, and experience, and participation in this and other Hobbs Act robbery

3

investigations, I know the following:

        a.     The fruits and instrumentalities of criminal activity are often concealed in digital form. Furthermore, digital camera technology is often used to capture images of tools and instrumentalities of pending criminal activity. Cell phones have both digital storage capacity and digital camera capabilities.

        b.     Individuals involved in Hobbs Act robbery often use digital storage devices to maintain telephone number "contact lists" of individuals who may have assisted in the planning of this and other criminal activity and sometimes take photographs of themselves and/or co-conspirators.

        c.     Individuals who possess or own handguns or other weapons frequently photograph themselves holding the handguns or other weapons.

        d.     Photographs on a suspect's digital device sometimes show the suspects handling proceeds or other property taken during robberies.

        e.     Individuals who engage in Hobbs Act robbery often use cellular telephones to communicate with co-conspirators via phone calls and text messages.

        f.     Cell phones often record the phone's historical location data.

## PROBABLE CAUSE

12.     This investigation concerns an armed robbery of B&J Restaurant and Carryout, located at 2251 Wilkens Ave, Baltimore, Maryland. Defendants Jason WALKER and Joseph COATES were initially identified as suspects involved in the robbery, and were ultimately detained, arrested, and indicted federally for the offense. *See* Crim. No. GLR-18-414.

13.     Specifically, on February 21, 2018, two individuals barged into B&J Restaurant and Carryout wearing ski masks and sunglasses, and accosted two store owners who were working

4

at the time. According to the owners, one suspect pointed a handgun at them while the other emptied the cash register of its contents. After the robbers took the cash, they forced the owners to empty their pockets, took their cell phones, and then fled the restaurant.

14.     One of the owners immediately called 911 to report the armed robbery, and BPD officers responded to the scene. As the first officer arrived, one of the owners stated that they had been robbed by two men at gunpoint. He described the two robbers as: (1) a tall, heavy-set black male wearing black; and (2) a medium-build black male wearing a green t-shirt and blue jeans. He also stated that, after the robbery, both robbers fled on Eagle Street.

15.     While canvassing the area, the BPD officer observed two black males in an alley, who appeared similar to the description provided by the victim, standing by a wall counting and splitting a substantial amount of U.S. currency. The black male counting the money, later identified as Jason WALKER, was wearing a green t-shirt and blue jeans, and the black male standing next to WALKER, later identified as Joseph COATES, was wearing was wearing a black t-shirt. Subsequently, WALKER and COATES were detained by BPD officers for further investigation.

16.     BPD officers escorted one of the victims to the location where WALKER and COATES were being detained. The victim then identified the two suspects as the men that had committed the robbery. The BPD officers placed WALKER and COATES under arrest.

17.     During searches incident to arrest, BPD officers recovered the following items from WALKER's and COATES's persons: $272.00 in U.S. currency; a plastic bag containing change totaling $21.07; two blue bandanas; a receipt from B&J Restaurant and Carry Out for $16.14, dated 02/21/18/2:55 pm; a black ski mask; and four cell phones. Two of the recovered cell phones—a

5

Galaxy Note 8 and a Galaxy S4—were the cell phones that had been taken from the victims during the robbery.

18.     BPD officers then canvassed the area in which WALKER and COATES were seen counting money, and recovered a loaded H&R 939, .22 Long Rifle Revolver.

## THE SUBJECT ELECTRONIC DEVICE

19.     As noted above, two of the recovered cell phones belonged to the victims. The cell from recovered COATES's person is the **Subject Electronic Device** and is believed to be his personal cell phone. The **Subject Electronic Device**, along with the rest of COATES's personal property, was seized and ultimately taken to the state facilities where WALKER and COATES are then being detained.

20.     On August 31, 2018, the Hon. J. Mark Coulson authorized a search and seizure warrant for the **Subject Electronic Device**. *See* Case No. JMC-18-2411. The ATF attempted to execute that warrant within 14 days using a specific forensic extraction device. Due to the security protection on the **Subject Electronic Device**, however, the search was unsuccessful. Law enforcement now believes that due to the advancements in technology, and through the use of more sophisticated extraction devices, it will be able to conduct a successful search of the **Subject Electronic Device**.

21.     The **Subject Electronic Device** currently remain in the custody of Bureau of Alcohol, Tobacco, Firearms, and Explosives, Baltimore Field Division. The only known specifics of each phone requested for authorization to search and seize are described in Attachment A, and the types of information expected to be recovered from the devices are described in Attachment B.

22.     Accordingly, I submit there is probable cause that COATES participated in the

6

commercial armed robbery crime in violation of Title 18 U.S.C. § 1951 and § 924(c), and that, based on my training, knowledge and experience, evidence of this crime is contained within the **Subject Electronic Device**.

23.    Moreover, to the extent that the warrant authorizes the seizure of any tangible property, any wire or electronic communication (as defined in 18 U.S.C. § 2510), or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above.

24.    Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises.  Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

### CONCLUSION

WHEREFORE, I respectfully request that the Court issue a warrant authorizing members of the FBI or the ATF, or their authorized representatives, including other law enforcement agents assisting in the above described investigation, to seize and search the **Subject Electronic Device**, as described in Attachment A, for the purpose of identifying electronically stored data particularly described in Attachment B and using the protocols described in Attachment B.

Javon Weaver
Special Agent, ATF

Signed and sworn to before me this _____ 2 5TH _____ day of October, 2019.

The Honorable Beth P. Gesner
Chief United States Magistrate Judge

7

**ATTACHMENT A:**            19 - 3 5 1 3 BPG

**Item to Searched**

| Subject Electronic Device | One black LG cell phone, unknown model, unknown serial number, submitted under property number 0002 of case number 761040-18-0063, seized from Joseph COATES on February 21, 2018. The phone is stored with the property belonging to Joseph COATES at the Bureau of Alcohol, Tobacco, Firearms, and Explosives, Baltimore Field Division, located at 31 Hopkins Plaza, 5th floor, Baltimore, Maryland, 21201. |
|---|---|

1

*19 - 3 5 1 3 BPG*

**ATTACHMENT B**
**Items to be Seized**

All records contained in the items described in Attachment A which constitute evidence

of violations of 18 U.S.C. § 1951, Hobbs Act Robbery and Conspiracy to Commit Hobbs Act

Robbery; and 18 U.S.C. § 924(c), Use of a Firearm in Furtherance of a Crime of Violence,

including the following items, as outlined below:

1. All of the following:

    a. digital images and photographs;

    b. digital videos;

    c. records of incoming and outgoing voice communications;

    d. records of incoming and outgoing text messages;

    e. the content of incoming and outgoing text messages;

    f. voicemails;

    g. voice recordings; and

    h. lists of contacts/associates and related identifying information

2. Any and all records related to the location of the user(s) of the devices.

3. For each Device:

    a. Evidence of who used, owned, or controlled the devices at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

    b. evidence of software that would allow others to control the Devices, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

    c. evidence of the lack of such malicious software;

    d. evidence of the attachment to the Devices of other storage devices or similar containers for electronic evidence;

2

    e.  evidence of counter forensic programs (and associated data) that are designed to eliminate data from the Devices;

    f.  evidence of the times the Devices were used;

    g.  passwords, encryption keys, and other access devices that may be necessary to access the Devices;

    h.  documentation and manuals that may be necessary to access the Devices or to conduct a forensic examination of the Devices;

    i.  contextual information necessary to understand the evidence described in this attachment.

4.  With respect to the search of any of the items described above which are stored in the form of magnetic or electronic coding on computer media or on media capable of being read by a computer with the aid of computer-related equipment (including CDs, DVDs, thumb drives, flash drives, hard disk drives, or removable digital storage media, software or memory in any form), the search procedure may include the following techniques (the following is a non-exclusive list, and the government may use other procedures that, like those listed below, minimize the review of information not within the list of items to be seized as set forth herein, while permitting government examination of all the data necessary to determine whether that data falls within the items to be seized):

    a.  surveying various file "directories" and the individual files they contain (analogous to looking at the outside of a file cabinet for markings it contains and opening a drawer believed to contain pertinent files);

    b.  "opening" or cursorily reading the first few "pages" of such files in order to determine their precise contents;

    c.  "scanning" storage areas to discover and possible recover recently deleted files;

    d.  "scanning" storage areas for deliberately hidden files; or

    e.  performing key word searches or other search and retrieval searches through all electronic storage areas to determine whether occurrences of language contained in such storage areas exist that are intimately related to the subject matter of the investigation.

5.  If after performing these procedures, the directories, files or storage areas do not reveal evidence of the specified criminal activity, the further search of that particular directory, file or storage area, shall cease.